UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOMESITE INSURANCE COMPANY OF THE MIDWEST, a North Dakota corporation<br><br>Plaintiff,<br><br>v.<br><br>PATRICK ASCOLESE, a Washington resident, EMILY ASCOLESE, a Washington resident, PAUL DRINKWINE, a Washington resident, and WILLIAM REED, a Washington resident,<br><br>Defendants. | Case No. C17-1323RSM<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUGMENT |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Summary Judgment. Dkt. #17.  Plaintiff Homesite Insurance Company of the Midwest ("Homesite") moves the Court for a declaratory judgment stating that it owes no duty to defend or indemnify Defendants Patrick and Emily Ascolese in an underlying King County Superior Court case. In that case, Paul Drinkwine and William Reed accuse the Ascoleses of breaching covenants and/or easements governing certain real property. The Ascoleses tendered Homesite, their homeowner's insurance provider, to arrange insurance protection and/or defense to their underlying case. Homesite

ORDER

PAGE - 1

agreed to defend the Ascoleses while under a full reservation of rights to disclaim coverage for both defense and indemnity based on policy exclusions. Homesite argues that because Mr. Drinkwine and Mr. Reed do not allege bodily harm or property damage in the underlying case and because the Ascoleses acted intentionally, it owes no duty to defend or indemnify. For reasons discussed herein, the Court now DENIES Plaintiff's Motion for Summary Judgment.

## II.    BACKGROUND

The background facts do not appear to be in dispute. On or about March 19, 2015, Defendants Patrick Ascolese and Emily Ascolese (collectively, "Ascoleses") purchased a single-family home on Lot B of a seven-unit residential short plat ("Subject Property") in Seattle, Washington. Dkt. #1-1 at ¶ ¶ 2.2 and 2.4.

Homesite underwrote a Home Owners 3 Insurance Policy No. 33020771 to the Ascoleses from March 2, 2015, to March 2, 2016, ("15-16 Policy") and from March 2, 2016, to March 2, 2017 ("16-17 Policy"). Dkt. #1-2 at 3 and 39. Under the applicable definitions, Patrick and Emily Ascolese were the "named insured" shown in the Declaration for Policy Number 33020771. Dkt. #1-2 at 3 and 39. The Policies provided $300,000 of Personal Liability Coverage. *Id*. at 3 and 20. The Ascoleses also purchased supplemental insurance coverage in the form of a Personal Injury-Washington Endorsement (HO 46 18 0900) for which they paid an additional $20.00 annual premium. Dkt. #1-2 at 4 and 40. This Personal Injury Endorsement covered both Policies, including the date when the underlying case was filed. *Id*.

Paul Drinkwine and William Reed are the Ascoleses' neighbors and owners of separate townhomes within the Subject Property. The Subject Property includes an easement for "Ingress, Egress, Parking and Trash/Recycle." Dkt. #19-1, Ex. B at 10-20. An alleged infringement of this easement is the subject of the underlying King County case. *See* Dkt. #1-1.

ORDER

On or about October 12, 2016, Defendants Paul Drinkwine and William Reed filed a Complaint that alleged the following against the Ascoleses:

> Ascolese [sic] have repeatedly and on a continuing basis parked . . . vehicles on the Easement portion of Lot A and outside of their permitted parking area pursuant to the Declaration . . . that have impeded plaintiffs' access to and ability to maneuver their vehicles in an out of the parking pad assigned to Lot E . . . and have used the Easement for other purposes not constituting ingress and egress to their respective homes, including, without limitation, placing outdoor furniture, grills, and other items of personal property, fixtures, and/or structures therein.

Dkt. #1-1 at ¶¶ 2.11-12.

In the underlying case, Mr. Drinkwine and Mr. Reed pleaded claims against the Ascoleses for (1) Quiet Title, (2) Request for Declaratory and Injunctive Relief, (3) Nuisance, (4) Trespass, and (5) Breach of Declaration. Dkt. #1-1 at ¶¶ 3.1-16. They seek declaratory and equitable relief, unspecified damages, and attorney's fees. *Id*. at 8.

On February 23, 2017, Homesite received the Ascoleses' notice and request for insurance and/or defense in the underlying case. Dkt. #1-3 at 2. On March 7, 2017, Homesite notified the Ascoleses via mail that it had received their request, and that Homesite was "prepared to provide them with a defense to this lawsuit while reserving its rights to disclaim coverage for both defense and indemnity in the future based on the exclusions noted herein." *Id*. at 5. On July 31, 2017, Homesite mailed the Ascoleses a second letter "as supplement to the prior Reservation of Rights letter dated March 7, 2017." *See* Dkt. #1-4. As of December 12, 2017, Homesite had, and was still, providing the Ascoleses with legal defense in the underlying King County case. Dkt. #17 at 4.

On September 1, 2017, in this Court, Plaintiff Homesite filed a Complaint seeking declaratory judgment that "it owes no duty to defend or indemnify Defendants Patrick and Emily

Ascolese, Paul Drinkwine, and William Reed from any of the claims in the Underlying Lawsuit."
*See* Dkt. #1. Further, on October 23, 2017, both Homesite and the Ascoleses stipulated that Paul Drinkwine and William Reed "have only a nominal interest in the outcome of this insurance coverage dispute between Homesite and the Ascoleses." Dkt. #11 at 3. Defendants Drinkwine and Reed are expected to participate minimally, if at all, in this matter. *Id*.

On December 12, 2017, Homesite filed the instant Motion for Summary Judgment and declaratory Judgment. *See* Dkt. #17.

Both the 15-16 Policy and the 16-17 Policy insuring agreements provide:

> **DEFINITIONS**
> In this policy, "you" and "your" refer to the "named insured" shown in the Declarations. In addition, certain words and phrases are defined as follows:
> **2. Bodily injury** means bodily harm, sickness or disease, except a disease which is transmitted by an insured through sexual contact. **Bodily injury** includes required care, loss of services and death resulting from covered bodily harm, sickness or disease.
> . . .
> **7. Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
> **a.** Bodily injury; or
> **b. Property damage**.
> **8. Property damage** means physical injury to, destruction of, or loss of use of tangible property.
> **HO 00 03 08 96**

Dkt. #1-2 at 7 (bold in original).

> **COVERAGE E – PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:
> 1. Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from an **occurrence** equals our limit of liability.

**HO 00 03 08 96**

Dkt. #1-2 at 20 (bold in original).

Both the 15-16 Policy and the 16-17 Policy contain the following exclusions:

**SECTION II – EXCLUSIONS**

1. **Coverage E - Personal Liability** . . . do not apply to **bodily injury** or **property damage**:

a. Which is expected or intended by one or more **insureds**;

. . .

**HO 00 03 08 96**

Dkt. #1-2 at 21 (bold in original).

Both the 15-16 Policy and 16-17 Policy contain additional coverage for "Personal Injury-Washington." Dkt. #1-2 at 4 and 40. The Personal Injury Endorsement provides:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**PERSONAL INJURY – Washington**

For an additional premium, under **Coverage E - Personal Liability**, the definition "bodily injury" is amended to include personal injury.

"Personal injury" means injury arising out of one or more of the following offenses, but only if the offense was committed during the policy period:

. . .

3. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

. . .

**HO 46 18 09 00**

Dkt. #1-2 at 35 (bold in original).

ORDER

PAGE - 5

### III.    DISCUSSION

#### A.  Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251. To meet this burden, the non-moving party must come forward with specific, admissible facts. Fed. R. Civ. P. 56(c).

Under Washington State law, interpretation of an insurance contract is a question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). Determining whether coverage exists is a two-step process. First, the insured must show the loss falls within the scope of the policy's insured losses. *McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724,

ORDER

PAGE - 6

731 837 P.2d 1000, 1003-1004 (1992). Second, to avoid coverage, the insurer must show the loss is excluded by specific policy language. *Id.* When interpreting an insurance policy, "ambiguities are resolved in favor of the policyholder." *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251, 252 (1987) (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)). In addition, "exclusionary clauses are to be construed strictly against the insurer." *Id.* (citing *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 215, 702 P.2d 1247 (1985)). "The terms of a policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Overton*, 145 Wn.2d at 424. Furthermore, a policy must be considered "as a whole," including riders or endorsements. *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 571, 964 P.2d 1173, 1177 (1998). Defined terms "should be interpreted in accordance with [the] policy definition." *Id.* The determination of the insurer's duty to defend may be made in a declaratory judgment proceeding. *Safeco Ins. Co. v. Dairyland Mut. Ins. Co.,* 74 Wn.2d 669, 671, 446 P.2d 568 (1968); *Government Employees Ins. Co. v. Woods,* 59 Wn.2d 173, 186, 367 P.2d 21 (1961).

The Supreme Court of Washington held that claims for trespass and nuisance constitute a personal injury insofar as they relate to [insurance] policies that provide coverage for a personal injury arising from a "wrongful entry" and/or "other invasion of the right of private occupancy." *Kitsap Cty.,* 136 Wn.2d at 571. Further, the average purchaser of insurance would think that a trespass was a wrongful entry. *Id.* at 589. And, even if the term "wrongful entry" was ambiguous, the result would be the same in that any ambiguity must be construed against the insurer. *Id.*

Washington State courts have held that a "nuisance is an unreasonable interference with another's use and enjoyment of property", whereas a "trespass is an invasion of the interest in exclusive possession of property." *Kitsap Cty.,* 136 Wn.2d at 592. Thus, a claim of nuisance is

ORDER

PAGE - 7

equivalent to a claim for wrongful entry and other invasion of the right of privacy. *Id.* Moreover, the plain, ordinary, and popular meaning that an average purchaser of insurance would ascribe to the phrase "other invasion of the right of private occupancy" would include a trespass on or against a person's right to use premises or land that are secluded from the intrusion of others. *Kitsap Cty.*, 136 Wn.2d at 591.

### B. Coverage Pertaining to Patrick and Emily Ascolese

#### 1. *Allegations of Bodily Injury*

In its Motion for Summary Judgment, Homesite argues that the Ascoleses' 15-16 and 16-17 Policies provide liability coverage only for "bodily injury" as defined in the Policies. Dkt. #17 at 7. Thus, since the underlying case contains no allegations of "bodily harm, sickness, or disease" as defined under the Policies, Homesite contends it is entitled to summary judgment. Dkt. #1-2 at 6. In the underlying complaint, Mr. Drinkwine and Mr. Reed allege claims for quiet title, declaratory and injunctive relief, nuisance, trespass, and breach of the Declaration and associated Easements. *See* Dkt. #1-1.

In their Response, the Ascoleses point to Mr. Drinkwine's deposition testimony from December 20, 2017, contending that he alleged potential bodily injury in the form of emotional distress:

Q What are the damages that you've incurred for the alleged inconvenience of ingress and egress to your parking pad?
A Tons of emotional stuff. I don't know how you quantify that.
Q Are you claiming emotional distress damages?
A Not *yet*.

Dkt. #18 at 12 (emphasis in original).

In its Reply, Homesite argues that the Ascoleses conceded that emotional distress is the only possible bodily injury alleged as damages in the underlying case. Dkt. #21 at 5. (citing *Daley v. Allstate Ins. Co.,* 135 Wn.2d 777, 784–94, 958 P.2d 990 (1998)). Homesite contends that bodily injury is unambiguously defined as bodily injury, sickness, disease, or death, and thus, recovery is unavailable for emotional distress unrelated to physical injury. *Id.*

The Ascoleses have not persuaded this Court to believe that Mr. Drinkwine and/or Mr. Reed have sufficiently pleaded emotional distress because emotional distress is not found within the four corners of the underlying complaint. *See* Dkt. #1-1. Moreover, even if emotional distress were alleged, this Court would find for Homesite insomuch that emotional distress, unrelated to physical injury, does not appear to trigger insurance coverage.

Yet, both parties have missed a key fact regarding the definition of bodily injury in both the 15-16 and 16-17 Policies: the supplemental Personal-Injury Endorsement ("Endorsement"). *See* Dkt. #1-2 at 4, 35, and 40. In that Endorsement, the definition of "bodily injury" is amended to include "personal injury." Most relevantly, the coverage is extended to injuries arising out of the following offenses: ". . . 3) wrongful entry into, or invasion of the right or privacy occupancy of a . . . premises that a person occupies . . ." *Id.* at 35.

As previously discussed, the Supreme Court of Washington—when answering a certified question by this Court—held "that claims for trespass and nuisance constitute personal injury insofar as they relate to [insurance] policies that provide coverage for a personal injury arising from a 'wrongful entry' and/or 'other invasion of the right of private occupancy.'" *Kitsap Cty.,* 136 Wn.2d at 571.

In the underlying suit, Mr. Drinkwine and Mr. Reed did in fact, *inter alia*, allege nuisance and trespass against the Ascoleses. Dkt. #1-1 at ¶¶ 3.6-13. In Sections 3.6-9, Mr. Drinkwine and

ORDER

PAGE - 9

Mr. Reed allege that "[d]efendants have unreasonably interfered with the plaintiffs' use and enjoyment of the Easement . . . and have, thereby, created and perpetuated a nuisance." *Id*. Further, in Sections 3.11-13, Mr. Drinkwine and Mr. Reed allege that "[d]efendants or one or more [of] them have trespassed upon the Easement in the ways alleged in this Complaint." Dkt. #1-1 at 7-8.

Given the plain language of the Policies, Washington State law, and the remainder of the record, a reasonable trier of fact could conclude that the underlying case does, in fact, contain allegations of bodily injury (nuisance and trespass).

### 2. *Allegations of Property Damage*

With respect to the requirement of "property damage," Homesite contends that "the underlying case contains no allegations of 'physical injury' or 'loss of use' of any 'tangible property'" as to give rise to its duty to defend or indemnify the Ascoleses. Dkt. #17 at 8. In support, Homesite primarily relies on the language in the 15-16 and 16-17 Policies that define property damage as "physical injury to, destruction of, or loss of use of tangible property." Dkt. #1-2 at 7. Homesite seeks support in *Guelich v. Am. Prot. Ins. Co.*, 54 Wn. App. 117, 120, 772 P.2d 536, 538 (1989), which held an infringement upon an easement/declaration for a loss of view (obstruction) did not constitute property damage, and thus, the insurance company had no duty to defend. Dkt. #17 at 8.

In their Response Motion, the Ascoleses distinguish *Guelich* from the instant case by comparing intangible and tangible property (airspace to asphalt and cement). In an attempt to persuade this Court that the underlying case does, in fact, allege a loss of use to tangible property (a parking space), the Ascoleses state that references to the underlying easement refers to the loss of use of the improvements, including the asphalt where vehicles are maneuvered. Dkt. #18

ORDER

PAGE - 10

at 16. And because an average person purchasing insurance would consider [that] pavement and/or asphalt is tangible property because it can be touched, seen, and smelled, the Ascoleses contend the underlying case alleges property damage. *Id.*

The 15-16 and 16-17 Policies define "property damage" to mean "physical injury to, destruction of, or *loss of use of tangible property.*" Dkt. 1-2 at 7 (emphasis added). Defendants do not contend that either Policies contain ambiguous language regarding property damage, and this Court does not find otherwise. This Court finds that this case clearly involves allegations of the loss of use of tangible property, and Homesite has failed to prove why coverage should not exist on these facts.

### 3. Occurrence

Homesite next contends that "the Underlying Complaint does not allege any accidental behavior, and therefore, does not allege a covered 'occurrence' under the Policies." Dkt. #17 at 11. The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in Bodily injury or Property damage." Dkt. #1-2 at 7. But neither Policy defines the term "accident." *Id.* Where the word "accident" is not otherwise defined in a policy, Washington State courts look to Washington State common law for a definition. *Detweiler v. J.C. Penney Cas. Ins. Co.,* 110 Wn.2d 99, 104, 751 P.2d 282, 284 (1988).

Washington State law is well settled that an accident is never present when a deliberate act is performed unless some additional unexpected, independent, and unforeseen happening occurs, which produces or brings about the result of injury or death. *Id.* (citing *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 263-64, 579 P.2d 1015 (1978)). Additionally, the means and the result must be unforeseen, involuntary, unexpected, and unusual. *Id.* Based on

ORDER

PAGE - 11

this principle, coverage has been denied as a matter of law when what occurred was not an "accident." Thus, for example, "the law will not countenance one intentionally shooting someone and then saying that since he or she did not intend to hurt the person shot, what happened was an 'accident' covered by liability insurance." *Detweiler,* 110 Wn.2d at 105–06. But where an additional, unexpected, independent, or unforeseen happening results in the injury, the existence of coverage has been determined as a question of fact, necessitating a trial to determine whether what occurred was an accident. *Id.* at 108.

In the underlying complaint, Mr. Drinkwine and Mr. Reed argue that the Ascoleses were "on notice of the Short Plat and Declaration when they purchased their respective lots in the Short Plat on or about March 19, 2015." Dkt. #1-1 at ¶ 2.4. Homesite argues that since the Ascoleses had actual notice of the Short Plat and Declaration, and have repeatedly disregarded the terms therein by parking within the easement area, their conduct is intentional—not accidental—and "cannot be reasonably described as unforeseen, involuntary, unexpected, or unusual." Dkt. #21 at 10.

In support of its argument, Homesite refers to, *inter alia*, *State Farm Fire & Cas. Co. v. El-Moslimany*, 178 F. Supp. 3d 1048 (W.D. Wash. 2016). In that case, State Farm argued that it had no duty to defend its insureds, the El-Moslimanys, in an underlying suit. *Id.* In that underlying lawsuit, the plaintiff alleged the El-Moslimanys:

> repeatedly made knowingly false statements published to third parties in writing, orally, and through electronic means, in response to on-line articles written about her, in Facebook postings and emails, and in a blog maintained by insureds . . . appeared in person and slandered the plaintiff in her neighborhood, as well as at public conferences, where they distributed leaflets and spread out banners containing false and defamatory statements and directing onlookers to insured's blog, causing damage to her [the plaintiff's] reputation and career, interfered with investments, relationships, and fundraising efforts in her business and other ventures, prompted a publishing

ORDER

PAGE - 12

company to back out of a contract to publish her biography, caused her to fear for her physical safety, and otherwise adversely affected her physical and mental health.

*El-Moslimany*, 178 F. Supp. 3d at 1052-53.

In its Order Granting Summary Judgment, the court held that an "incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable." *El-Moslimany*, 178 F. Supp. 3d at 1058 (citing *Roberts*, 179 Wn. App. at 756). "Rather than describing accidental behavior or result, the facts alleged in the [underlying] complaint, viewed liberally and objectively, reflect deliberate conduct, which cannot be reasonably described as unforeseen, involuntary, unexpected, or unusual." *El-Moslimany*, 178 F. Supp. 3d at 1060. Homesite urges this Court to reach the same conclusion here.

In their Response to Homesite's Motion, the Ascoleses argue that when "liberally construed in favor of the insured," the underlying complaint can be interpreted to allege non-intentional conduct. Dkt. #18 at 19 (citing *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 164 P.3d 454 (2007)). The Ascoleses ask this Court to apply *Woo's* subjective standard. Dkt. #18 at 19-20. In *Woo*, the insured's policy defined the term "accident" and imposed a subjective standard: "Accident is defined as a 'fortuitous circumstance, event or happening that takes place *and is neither expected nor intended from the standpoint of the insured.*'" *Woo*, 161 Wn.2d at 62–63 (emphasis added). However, *Woo* does not apply here because the Ascoleses' Policies do not define the term "accident" to include a subjective standard. This Court is not persuaded by either Homesite's or the Ascoleses' arguments.

Rather, three analogous, but not precedential, Western District of Washington cases are informative and persuasive. Each case specifically addresses whether an "occurrence" happened

ORDER

PAGE - 13

as defined in a homeowner's insurance policy. First, in *Keeley v. Travelers Home & Marine Ins. Co.,* an insured tendered his homeowner's insurance to defend an underlying suit, which alleged damage from the insured's installation of wood floors in his upper unit condominium in violation of association bylaws. C16-0422-JCC, 2016 WL 3405493, at *1 (W.D. Wash. June 21, 2016). In *Keeley*, the insured alleged he did not know of the bylaw, which required him to obtain consent from the lower unit's owner before installing wood floors, and thus, the installation was an "accident." *Id.* Because that policy didn't contain an express subjective definition of the term accident, the court used the objective standard that an insured's subjective knowledge does not govern. *Id.* at *4 (citing *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 399-400, 823 P.2d 499, 508 (1992)). The court concluded that the insured had a duty to comply with the association's bylaws and concluded the harm resulting from the floor's installation was not truly an "unexpected, independent, and unforeseen happening." *Keeley,* 2016 WL 3405493 at *4. As such, there was no "occurrence" within the meaning of the policy. *Id.*

Second, in *Allstate Ins. Co. v. Jackson,* Mr. Jackson, the insured, intentionally traded a gun to a high school classmate, who later shot and killed his step-brother in their residence. C09-1478RSM, 2010 WL 1849076, at *4 (W.D. Wash. May 6, 2010). The deceased's representative filed suit against Mr. Jackson, who tendered his insurance company, Allstate, for defense. *Id.* Allstate filed a Motion for Summary Judgment in this Court, seeking a ruling that it owed no duty to defend because Jackson's intentional act was not an "occurrence" as defined by his policy. *Jackson,* 2010 WL 1849076 at *4. Like the Ascoleses' Policies, Mr. Jackson's insurance policy defined the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." *Id.* at *2. Moreover, the term "accident" was not defined in that

ORDER

PAGE - 14

policy and a subjective standard was not used. *Id.* This Court found no genuine dispute whether Jackson intentionally traded a gun to Jordan and that he only intended to trade ownership and possession of the gun. *Id.* at *4. Thus, this Court found that Jordan's use of that gun in bringing about his step-brother's death was "some additional unexpected, independent and unforeseen happening" under Washington State law. *Jackson,* 2010 WL 1849076 at *4.

In a third case, *Allstate Prop. & Cas. Ins. Co. v. Strand,* a defendant's tree removal service entered the Strand's [insureds] property without approval and removed four trees, causing damage to the Strand's home, and Mr. Strand tendered his homeowner's insurance policy, Allstate, for coverage. No. C11-1334JLR, 2012 WL 2004994 at *1 (W.D. Wash. June 5, 2012). In that case, an easement between neighbors existed that said "[u]nder a view restriction easement that governs the height of trees and other vegetation, adjacent lot owners had a right of entry to the parcel of land owned by the Strands [plaintiff and insured] for the purpose of trimming, topping, or pruning of trees or vegetation." *Strand,* 2012 WL 2004994 at *1. Allstate argued the defendant's actions were intentional, and as such, were not an "occurrence" as defined in the policy. *Id.* Allstate relied on the defendant's answer to the Strands' complaint in Snohomish County Superior Court, arguing that there is no dispute as to material facts. *Id.* Allstate further argued that the defendant, in his answer, admitted to removing some trees, and thus, he was "aware of the implications or consequences of" his actions, or that all the damages from the tree cutting "could have been expected from [his] acts." *Id.* at *6. The Strands argued that the damages occasioned by Hathaway's conduct constituted an "occurrence" because his conduct resulted in unintended losses and consequences that are included within the meaning of "accident" under Washington State law. *Strand*, 2012 WL 2004994 at *4.

The *Strand* Homeowner's Policy covered "property damage arising from an occurrence

ORDER

PAGE - 15

to which [the] policy applies." *Strand*, 2012 WL 2004994 at \*4. Like the Ascoleses' insurance Policies, Mr. Strand's homeowner's policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at \*4. The *Strand* court held that "whether the admissions in the [defendant's] answer to the Strands' lawsuit demonstrate the conclusions asserted by Allstate is a question of fact to be resolved by a jury." *Strand*, 2012 WL 2004994 at \*7. Moreover, those facts did not demonstrate to the court that there was no question of fact whether the damage to the Strand home or to the hillside would be unforeseen or unexpected under the objective standard. *Id*.

Here, there is no genuine dispute that the Ascoleses intentionally parked in the disputed area. In fact, they admit to parking there. Dkt. #19 at 5. *Woo's* subjective standard does not apply because the Ascoleses' Policies do not define the term "accident." Instead, this Court will use *Butler's* objective standard. *See Butler*, 118 Wn.2d at 402 (citing *Roller v. Stonewall Ins. Co.,* 115 Wn.2d 679, 801 P.2d 207 (1990)). But even an intentional act may be an accident if "some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death." *Strand*, 2012 WL 2004994 at \*7 (citing *Detweiler,* 110 Wn.2d at 108).

Under the objective standard, the Court concludes that Homesite is not entitled to summary judgment because some additional, unexpected, independent and unforeseen happening occurred which produced or brought about the result of injury. *Detweile*r, 110 Wn.2d at 108. In the underlying complaint, Mr. Drinkwine and Mr. Reed contend the "[D]eclaration also established an easement for a trash/recycle area *on* Lot A north of the Easement in lieu of the location indicated in the Short Plat, but it [the Declaration] did not alter the dimensions of the Easement as established by the Short Plat in any manner and the Short Plat has never been

ORDER

PAGE - 16

amended." Dkt. #1-1 at 4 (emphasis added). They also declare that "the [D]eclaration authorized the owners of Lots A and B to park vehicles on their assigned parking pads and/or north of their assigned pads, thereby providing for parking in *a north/south-oriented pull-in manner instead of the east/west parallel parking* manner indicated by the Short Plat." *Id*. This Court finds Mr. Drinkwine and Mr. Reed are correct in stating the Short Plat has never been amended. But they are incorrect in arguing that the Declaration established the Trash Enclosure *on* Lot A, and they are incorrect in arguing that the parking for Lot A and B provided parking in a *north/south oriented pull in manner instead of an east/west parallel manner*, as explained below.

First, Section 4.8 of the Declaration of Covenants and Easements ("Declaration"), states that "Peregrine [the developer] has constructed an area measuring approximately 12 feet north to south and 6 feet east to west *immediately east* of the Parking Pad assigned to Lot A as a "Trash Enclosure." Dkt. #19-1, Ex. B at ¶ 4.8 (emphasis added). But The Short Plat survey's "Trash/Recycle Area" enclosure depicts an area *west* of Lot A and Lot B's assigned Parking Pads. Dkt. #19-1, Ex. A at 7 (emphasis added). According to Mr. Ascolese's deposition testimony and the attached photographs, the "Trash Enclosure" appears to have been, in fact, constructed to the *east of Lot A's Parking Pad*, which is in accordance with Section 4.8 of the Declaration—but is not in accordance with the Short Plat survey—and not *on* Lot A's parking pad, as Mr. Drinkwine and Mr. Reed contend. *See* Dkt. #19-1, Ex. A at 7 and Ex. D at 31-32 (emphasis added).

Next, the Declaration states that "the [o]wners of Lots A and B may park, and permit the parking . . . on those [o]wner's respective Lots *in and/or north* of the parking assigned." Dkt. #19-1, Ex. B at ¶ 4.5 (emphasis added). According to the Declaration and the Short Plat, this Court does not find Mr. Drinkwine and Mr. Reed's argument that the Declaration provides

ORDER

PAGE - 17

parking in a pull-in North to South manner persuasive. Moreover, according to the pictures showing the disputed area (Dkt. #19-1, Ex. E at 31-32), the Declaration and/or Short Plat's easement boundary area appears to be blurred by the inlaying of pavers into the asphalt, which includes the Short Plat's original "Trash Enclosure" area. *See* Dkt. #19-1, Ex. E at 31-32. The pavers also appear to designate Lot A and Lot B's Parking Pad, including an area outside of the Short Plat's original survey designating a parking area for Lot B. *See id.* The Court only considers the aforementioned ambiguities in determining whether there was "some additional unexpected, independent and unforeseen happening . . . which produced or [brought] about the resulting injury or property damage." *Detweile*r, 110 Wn.2d at 108. The Court does not seek to determine the validity of the underlying Declaration or Easement.

After reviewing the Short Plat (Dkt. #19-1, Ex. A at 1), the Declaration (Dkt. #19-1, Ex. B at 9), Mr. Drinkwine's survey (Dkt. #19-1, Ex. C at 26), and Mr. Ascolese's survey (Dkt. #19-1, Ex. D at 28), this Court finds that, although Mr. Drinkwine and Mr. Ascolese are bound by the terms of the Declaration—due to the ambiguity between Section 4.8 of the Declaration, the Short Plat, the inlaying of pavers into the asphalt, and Mr. Drinkwine/Reed's interpretation of the documents—a reasonable person could find that an additional unexpected, independent and unforeseen happening brought about the resulting bodily injury or property damage. Further, Homesite has not demonstrated there is no genuine issue of material fact otherwise. Whether the admissions in the Ascoleses' answer to Mr. Drinkwine and Reed's lawsuit demonstrate the conclusions asserted by Homesite is a question of fact to be resolved by a jury.    Viewing the evidence in the light most favorable to the nonmoving party, Homesite failed to demonstrate that there is no genuine dispute as to whether the bodily injury and/or property damage alleged in the

underlying complaint was "unforeseen, involuntary, unexpected and unusual." *Detweiler,* 110 Wn.2d at 108. Thus, summary judgment is precluded.

4. *Policy Exclusions*

Lastly, Homesite argues that the Policies' Intentional Act Exclusion precludes its duty to defend and indemnify the Ascoleses. Dkt. #17 at 13. Homesite "emphasizes the 'eight corners' rule of analyzing the face of the complaint and the insurance policy to determine whether there is conceivable coverage under the policy." Dkt. #17 at 13 (citing *Expedia, Inc. v. Steadfast Ins. Co.,* 180 Wn.2d 793, 803–04, 329 P.3d 59, 64–65 (2014), *as corrected* (Aug. 6, 2014)). There are two exceptions to the eight corners rule that Homesite did not address: first, if coverage is not clear from the face of the complaint, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt on the duty to defend. *Id.* Second, if the allegations in the complaint conflict with facts known to the insurer or if the allegations are ambiguous, facts outside the complaint may be considered. *Expedia,* 180 Wn.2d at 803-04. Exclusionary clauses are strictly construed against the insurer, especially if they are of uncertain intent. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 69, 659 P.2d 509 (1983), *modified on reconsideration,* 101 Wn.2d 830, 683 P.2d 186 (1984). Here, the relevant exclusionary language states:

> [p]ersonal liability . . . do[es] not apply to bodily injury or property damage: which is *expected or intended* by one or more of the insureds even if the resulting bodily injury or property damage: is of a different kind, quality, or degree than initially expected or intended; or is sustained by a different person, entity, or property than initially intended.

Dkt. #1-2 at 45 (emphasis added).

ORDER

PAGE - 19

Homesite claims the Ascoleses "had knowledge of the Declaration and Easement when purchasing their home within the Subject Proprerty, and despite that knowledge, repeatedly breached the terms of the Declaration and Easement" by intentionally parking outside of the designated parking area. Dkt. #17 at 12. Because the Ascoleses' action was intentional, Homesite argues that the Policies' exclusionary language should control, and thus, it is precluded from a duty to defend or indemnify. *See* Dkt. #17. In support of its argument, Homesite cites to *Brosseau* and *Peasley* as exemplars of Washington State cases that have upheld similar exclusions in claims of intentional acts. Dkt. #21 at 11-12. This Court is not persuaded by either case.

First, in *Grange Ins. Co. v. Brosseau*, an insurance company moved for summary judgment, arguing that it had no duty to defend in an underlying wrongful death claim because its insured (who claimed self-defense) deliberately pumped a shot gun, aimed it, and pulled the trigger, killing the decedent. 113 Wn.2d 91, 93, 776 P.2d 123, 126 (1989). In that case, Mr. Brosseau's insurance policy excluded coverage for bodily injury [that was] "either *expected or intended* from the standpoint of the insured." *Id*. at 97 (emphasis added). That Court found that serious bodily injury, including death, was, from the insured's standpoint, obviously an expected result of his intentional act of shooting, and as such, insurance coverage was not triggered. *Id*. at 99.

Second, in *Allstate Ins. Co. v. Peasley*, an insurance company argued that a Criminal Acts Exclusion in its insured's homeowner's policy precluded liability coverage for injuries a victim sustained when she was shot by insured, when the shooting constituted the crime of Reckless Endangerment. 131 Wn.2d 420, 423, 932 P.2d 1244, 1249 (1997). In that case, Mr. Peasley [insured] pleaded guilty to the crime of Reckless Endangerment (RCW 9A.08.010(1)(c)), which, by law, met the objective standard [of an intentional act]. *Id*. at 431. Moreover, *Peasley* states that

ORDER

the [insurance exclusion] phrase "*expected or intended* by the insured" denotes a subjective standard. *Id*. (citing *Rodriguez v. Williams,* 107 Wn.2d 381, 382, 729 P.2d 627 1986) (emphasis added).

In the underlying case, Mr. Drinkwine and Mr. Reed argue that the Ascoleses intentionally caused the harm of trespass and nuisance by parking within the disputed area. Dkt. #1-1, Ex. A at ¶ ¶ 3.6-9 and 3.10-13. Unlike *Brosseau*, the evidence here presents a question of fact whether the Ascoleses' actually expected or intended to cause trespass or nuisance by parking their car(s) within the disputed area. *Brosseau*, 113 Wn.2d at 99 (finding no serious question when insured intentionally shot a defendant [decedent], he expected serious injury or death to result). Furthermore, under the facts presented here, the Ascoleses are not charged with a crime that, by law, meets an objective standard of an intentional act, like Reckless Endangerment. *Peasley*, 131 Wn.2d at 423. Rather, the Policies' plain language includes a subjective standard of "*expected or intended* by one or more of the insureds." Dkt. #1-2 at 45 (emphasis added).

Considering all of the above, Homesite fails to demonstrate how the underlying complaint alleges that Mr. Ascolese actually expected or intended to cause the trespass or nuisance that would trigger the exclusionary provision. Thus, in strictly construing the Intentional Act Exclusion against the insurer, this Court finds that this is also not a basis for summary judgment.

/ / /

/ / /

ORDER

PAGE - 21

**IV.    CONCLUSION**

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS that Plaintiff Homesite's Motion for Summary Judgment (Dkt. #17) is DENIED.

DATED this 5 day of March 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE